IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT COOPER, #209556          *
        Plaintiff,
       v.                                  *   CIVIL ACTION NO. JFM-08-3209

JOHN A. ROWLEY, et al.          *
        Defendants.
                                             ***

MEMORANDUM

Procedural History

The court received this 42 U.S.C. § 1983 complaint for injunctive relief and damages[1] on November 26, 2008, from Robert Cooper ("Cooper"), an inmate housed at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. *See* Paper No. 1. His complaint consists of over eighty pages of jumbled allegations and names approximately 40 defendants, including correctional administrators, officers, case management personnel and healthcare staff. Cooper employs a "kitchen sink" approach to claim filing. He raises a plethora of claims concerning alleged multiple incidents occurring at NBCI and the Maryland Correctional Adjustment Center ("MCAC") occurring over a nineteen-month period.[2]

Cooper initial claims arise out of an August 26, 2008 incident. He alleges that on that date: (1) he informed officers during an escort from one NBCI housing unit to another that he was "in fear

---

[1]     Cooper also seeks to invoke this court's supplemental jurisdiction under 28 U.S.C. § 1367.

[2]     The complaint was accepted for filing although it does not comply with federal pleading requirements under Fed. R. Civ. P. 8(a) and (e). It levels innumerable claims against countless defendants. Cooper is cautioned that any future filings will be carefully scrutinized for compliance with Rule 8.

of his life" and required protective custody status.[3] He claims that he was administratively cited for refusing housing and placed on administrative segregation; (2) defendants failed to recognize his "First Amendment" right to free speech and expression by responding to his claim that the environment was unsafe for him by citing him with an infraction and then depriving him of his property without due process; (3) while housed on administrative segregation, he was informed that another inmate would be placed in his cell. Cooper told the officer he was in fear of his life and requested protective custody. Although the inmate was placed in another cell, Cooper received a notice of infraction and was placed on staff alert; (4) defendants discriminated against him by affording him "much different treatment that most prisoners in the same situation," and punished him without proper and fair procedures; (5) when Cooper's property was confiscated, he was deprived of his high blood pressure medication and an ink pen for writing sick-call encounter forms;[4] and (6) he was deprived of basic human needs (legal materials, telephone access, recreation, commissary items) while housed on administrative segregation and his laundry bag and its contents were lost.   Paper No. 1.

Cooper also raises a failure-to-protect claim concerning a January 9, 2007 escort at MCAC. He claims that at the same time as he was being escorted back to his housing unit from a clergy visit, inmate Danny Pearsall was also being escorted. Pearsall allegedly "verged" towards Cooper and spit into his face and mouth. He complains that instead of restraining Pearsall, an officer grabbed Cooper

---

[3]   From a review of Cooper's attachments it appears he is alleging that his "validated" enemies have friends, relatives, and gang brothers who would harm him in retaliation for a 2005 incident which occurred at the former Maryland House of Correction Annex, now known as the Jessup Correctional Institution. He names the validated enemies as Donte Spivey, Christopher Mills, and Danny Pearsall.

[4]   Cooper further claims that he was denied hygiene items, eyeglasses, and "segregation allowable" underwear.

around both arms, which rendered him unstable, and allowed Pearsall an opportunity to kick him to the floor.

Cooper next complains that in August, 2008, he was twice given an "unlawful" order to stop sending communications through the postal service to a private citizen, Mallissa Radonovich, subsequently had his cell searched for correspondence, and was given a notice of infraction. He claims that his rights under various constitutional amendments were violated.

Cooper also alleges that on March 26, 2008, a number of items were confiscated. When asked to give an address to send the property on March 29, 2008, he requested a forfeiture hearing and to be afforded the right to file an administrative remedy. He claims that he filed an administrative remedy in April 2008. Cooper contends that in October of 2008, he was cited with a notice of infraction for possessing, passing, or receiving contraband related to this property confiscation.

Defendant Correctional Medical Services, Inc. ("CMS") has filed a motion to dismiss or, in the alternative, motion for summary judgment and Cooper has filed opposition materials. Paper Nos. 18, 23 & 24. The served state defendants[5] have likewise filed a motion to dismiss or for summary judgment, which has triggered the filing of an opposition and reply.[6] Paper Nos. 27, 30, & 39. The

---

[5] According to the docket, service of process was not effected on defendants John Does, Nurse Rachel, Mayfield, Moore, Izuchuckwu, Phillips, Barnes, Pilson, Nurse Anthony, and Radonovich.

[6] Cooper has filed a "declaration for entry of default," which has been construed as a motion for default judgment. Paper No. 41. He complains that the served state defendants were granted an extension of time to file a reply, but have not done so and have thus failed to defend the case. The motion shall be denied. Defendants sought and were granted time until December 7, 2009, to file a reply to Cooper's opposition. Their reply was filed on that date and they are not in default of any court order.

matter is ready for consideration and may be determined without oral hearing.[7]  *See* Local Rule 105.6  (D. Md. 2009).

## Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *Celotex*, 477 U.S. at 322-323.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.  With this standard in mind, Cooper's allegations shall be addressed *seriatim*.

## Discussion

### Medical Care

The only clear medical claim raised by Cooper seemingly goes to the alleged confiscation of his high blood pressure ("HBP") medication and the failure to replace same for several days beginning August 26, 2008.  CMS claims that in August of 2008, Cooper was receiving the

---

[7]  Cooper has also filed a motion to obtain leave of court and a motion for production of documents. Paper Nos. 40 & 42.  He seeks leave of the court to depose MCAC inmate Walter Hall and to have documents and regulations produced related to the alleged January 9, 2007 incidents at MCAC and the August 2008 incidents at NBCI.  The motions shall be denied.  A scheduling order was not issued in this case. Therefore, discovery is not appropriate.  *See* Local Rule 104.4. (D. Md. 2009); *see also* Fed. R. Civ. P. 26(a)(1)(B)(iv). Further, Cooper, who has already filed opposition materials including personal declarations, does not demonstrate how the absence of inmate Hall's deposition or the materials in question render him unable to rebut defendants' responsive pleading.

medication Procardia XL, Lisonopril, and Lopressor for treatment of HBP. Each medication was prescribed as "keep on person," which permitted Cooper to keep the medication in his cell and take the drugs at suggested times. CMS argues that Cooper previously received sufficient packs of the medications which would have lasted until well after the time period in question. Paper No. 18, Ex. A at Bray Decl.; Ex. B.

According to Cooper's medical records he did not submit any sick-call requests regarding the alleged confiscation of his medications. CMS claims that medical staff was not involved in the confiscation of the medication and would not have known of the need for medication without the filing of a sick-call encounter form.

In Cooper's opposition he claims that healthcare personnel were placed on notice that he was without his HBP, cholesterol, gastric reflux, gout, arthritis, and headache medications. He asserts that security staff informed medical personnel of his serious medical needs and on one occasion staff was informed by "Nurse Rachel" that Cooper "can miss his medications and not be at risk of serious harm." He claims that medical staff did not retrieve his confiscated medication from the property room or the pharmacy during the time in question. He acknowledges that he signed for his gastric medication on August 30, 2008. Cooper claims that as writing implements were confiscated, he could not file sick-call encounter forms.

Judgment shall be entered in favor of Defendants to this claim. There is no showing that medical personnel were deliberately indifferent to Cooper's medication needs.[8] *See Estelle v.*

---

[8] As a corporate entity, CMS cannot be held liable under § 1983. It is well settled law that a claimant may not recover against a municipality on a *respondeat superior* theory under 42 U.S.C. § 1983. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 690-695 (1978). To the extent the complaint names CMS based solely upon vicarious liability, circuit law is clear. Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior. See*

*Gamble*, 429 U.S. 97, 104 (1976). In his original complaint he alleges only that his HBP medication was confiscated on August 26, 2008, but acknowledges that the prescription was received on August 30, 2008. Paper No. 1, Exs. at pg. 42. Further, the medical record indicates that Cooper received several blister packs of medication on August 30, 2008, several days after his medication and other property were allegedly confiscated. Finally, at no point does Cooper allege that he suffered detrimental effects or some concrete physical harm from the brief lack of medication. *See Anderson-Bey v. District of Columbia*, 466 F.Supp.2d 51, 63-64 (D. D. C. 2006); *Leon v. Johnson*, 96 F.Supp.2d 244, 248-249 (W. D. N. Y. 2000); *see also* 42 U.S.C. § 1997(e)(e). An Eighth Amendment deprivation has not been demonstrated.

Failure-to-Protect Claims

Cooper alleges that on January 9, 2007 inmate Daniel Pearsall broke away from his escort and ran towards him, spat at him, and was permitted to kick at him as he was being held in restraints by officers. The record submitted shows that Pearsall broke away from escort staff and attempted to assault Cooper, who was being escorted to a clergy visit, by spitting at him but his spittle missed Cooper and hit a wall. Cooper lunged toward Pearsall, who was already being restrained by an officer, and another correctional officer took Cooper to the floor to prevent him from making contact with Pearsall.[9] Cooper was assisted to his feet and was then escorted to the visiting booth. Pearsall

---

*Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982).

[9] In his opposition, Cooper claims for the first time that he was only being escorted by one officer, not two, as required by regulation and Pearsall did not "break away" from officers as he was not being held onto by correctional officers. He further states that Pearsall's spittle landed on his face and in his mouth and he was kicked by Pearsall. Cooper alleges for the first time that officers should have known of the risk of danger from Pearsall because of his "long history of violent behavior."

Cooper also claims that when being escorted through WCI over the course of March 8, 2007 to March 7, 2008, Sergeant Youngblood repeatedly overheard inmates yell death threats at Cooper. He also

was taken back to his cell.

Cooper complained of injuries to his right ankle, elbow, shoulder and wrist. Custody personnel observed no visible injury. Cooper was, however, escorted to the medical unit for evaluation and treatment and photographs were taken. Nurse Anthony Nwaiwu examined Cooper, found his vital signs to be normal, observed no evidence of laceration, focal deficits, or fracture, and found his range of motion and gait to be normal and steady. No further medical intervention was ordered. Pearsall received a notice of infraction and was charged with a number of rule violations.

On August 26, 2008, after being charged with disobeying a direct order to cease sending correspondence to a woman residing in Frederick, Maryland, Cooper was assigned to administrative segregation pending adjustment. He contends that during the escort to segregation he informed staff that he feared his life was in danger and requested protective custody status. When he arrived at the segregation housing unit, he refused to lock into his cell. He continued to refuse housing and was written an infraction, to which he pleaded guilty and received a fifteen-day segregation term. Defendants state that at no time did staff witness death threats made against Cooper, his OBSCIS enemies' list revealed that he had no known enemies housed at NBCI at the time of his allegations, and his basefile revealed that he had not made his safety concerns known to case management personnel.

Cooper received infractions for the third time on August 26, 2008, when he refused to accept a cellmate. He pleaded guilty to this infraction and received another fifteen days on segregation.

According to Defendants, Cooper was previously housed on an NBCI honor tier which is single celled as a result of good conduct and was removed from that unit for disobeying a direct

---

claims that the reason he was sent to NBCI was because he "snitched on his gang-banging cellmate" at the Jessup Correctional Institution and his ex-cellmate has gang buddies, friends, and relatives at NBCI.

order. They claim there is no established reason for him to receive a single cell.

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Under Fourth Circuit law, liability under the *Farmer* standard requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. *See Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir.1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id*. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient. *See Brown v. Harris,* 240 F.3d 383, 390-91 (4th Cir. 2001). Further, to state a claim for damages, the inmate must show a serious physical injury. *See De'Lonta v. Angelone*, 330 F. 3d 630, 634 (4th Cir. 2003); *see also Babcock v. White*, 102 F.3d 267, 272-73 (7th Cir. 1996).

The documents presented to the court show that Cooper had no known enemies at NBCI at the time in question, that MCAC staff did not knowingly permit Daniel Pearsall to attack him on January 9, 2007, but in fact stopped the incident from further escalating, and that there were no

documented reasons for him to be in a single cell in 2008.[10] Further, injuries suffered by Cooper, if any, as a result of the January 9, 2007 Pearsall attack were insignificant in nature.

### August 26, 2008 Notice of Infraction

A private citizen residing in Frederick, Maryland, Melissa Radonovich, telephoned NBCI staff on July 30, 2008, and advised them that she was receiving correspondence from Cooper, did not know him, and did not want to receive any letters from him. She subsequently put her request in writing and forwarded Cooper's letters to security staff. On August 8, 2008, a search was conducted of Cooper's cell and letters, matching the handwriting of letters sent to Radonovich, were found. Cooper was given a direct order not to write to Radonovich. On August 25, 2008, however, Radonovich again contacted NBCI staff and said that she had received another letter from Cooper. The letter was provided to staff, an investigation ensued, and it was determined that the handwriting matched the earlier letters. On August 26, 2008, Cooper was issued a notice inmate rule infraction for the failure to obey a direct order. He pleaded guilty to the charge on September 11, 2008, and received fifteen days of segregation.

Cooper was not sanctioned with the loss of good conduct credits. Due process was afforded to him respecting his adjustment proceeding. *See Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). He does not allege that he did not receive written notice of the infractions, the right to call witnesses and present evidence, or a hearing. Further, his allegation that a false report was written regarding

---

[10] In their reply, defendants argue that in order for Cooper to be eligible for single cell status at NBCI, he must qualify for preferred job assignment or demonstrate extraordinary need. They assert he has not satisfied either qualification.

the Radonovich incidents is negated by the record. In any event, such an allegation does not state a claim. *See Freeman v. Rideout*, 808 F.2d 949, 953 (2nd Cir. 1986).

Property Confiscation

Cooper alleges that his property was confiscated on March 26 and August 28, 2008. He seemingly claims that he was deprived of legal materials, his Bible, eyeglasses, and hygiene and commissary items and his laundry items and laundry bag were lost while he was housed on administrative segregation starting August 26, 2008. Cooper has failed to show that his temporary lack of access to these generalized property items adversely affected him. Further, pre-forfeiture review is available to him through the disciplinary hearing and remedy review process. To the extent that Cooper complains that his laundry was lost, no due process has been violated. In the case of lost or stolen property, sufficient due process is afforded an inmate if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post-deprivation remedy.[11]  *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[12]

Cooper further claims that items (pens, pencil, toothbrushes, and extension cords) were confiscated from him on or about March 26, 2008, and when he was required to give authorities an address to mail the property, he requested a forfeiture hearing and the right to file an administrative

---

[11] Plaintiff may seek relief through the Maryland's Tort Claims Act and the Inmate Grievance Office.

[12] *Juncker* relied on *Parratt* in dismissing a plaintiff's due process claims. Accordingly, although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post-deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property.

remedy. Cooper claims that he filed a remedy in April of 2008, and on October 13, 2008, he was further asked about the disposition of the property and informed that some of the items were considered contraband. Defendants do not address this particular claim in their memorandum. They do, however, provide a confiscation and personal property disposition sheet in their exhibits which shows that while the items were indeed confiscated on March 29, 2008, Cooper was filing a pre-deprivation remedy (administrative remedy procedure or "ARP"). Because it is not clear that a colorable claim has been raised by Cooper and defendants have not briefed the issue, this property claim shall be dismissed without prejudice.

## Conditions of Confinement

Cooper complains that while housed on administrative segregation starting August 26, 2008, he was not provided access to the telephone and recreation/exercise. An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively, prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the object component of an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *see Strickler*, 989 F. 2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). The

11

key in determining whether prison conditions become cruel and unusual is to examine the effect on the inmate.[13]  *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

Cooper was housed on administrative segregation for a brief period of time. He does not claim how he suffered ill-effects from the general limitations on his access to the telephone, commissary, and recreation/exercise. No Eighth Amendment violation has been demonstrated.[14]

## Conclusion

For the aforementioned reasons, defendants' summary judgment motions shall be granted. A separate order effecting the rulings made in this memorandum is being entered herewith.[15]

Date: __February 26, 2010__            ___/s/_____
                                       J. Frederick Motz
                                       United States District Judge

---

[13]  The Prison Litigation Reform Act states that "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). It is settled law that a prior physical injury is required for a prisoner to recover damages for emotional and mental injury. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997).

[14]  Cooper seemingly contends that there is a discriminatory animus involved in his treatment. Equal protection principles require generally that government officials behave in a way such "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). To succeed on an equal protection claim, Cooper "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Here, his conclusory allegations of discrimination are insufficient to state a viable claim under 42 U.S.C. § 1983.

[15]  In light of the decision with regard to Cooper's various § 1983 claims, this court declines to exercise its discretionary authority to take pendent jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).